IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


GEORGE ANTHONY,

       Petitioner,

    v.                                  No. 12-3022-SAC

DAVID R. MCKUNE, WARDEN,
LANSING CORRECTIONAL FACILITY,
and DEREK SCHMIDT, KANSAS
ATTORNEY GENERAL,

       Respondents.


MEMORANDUM AND ORDER

This case comes before the Court on a petition for habeas corpus filed pursuant to 28 USC § 2254 by an inmate at Lansing Correctional Facility in Lansing, Kansas.

Petitioner was charged with aggravated burglary, theft, and murder in the first degree, but the jury in May of 2003 was unable to reach a unanimous verdict so a mistrial was declared. Petitioner was tried in July of 2003 a second time and was acquitted of the charges of aggravated burglary and theft, but the jury was unable to reach a unanimous verdict on the murder charge so a mistrial was declared. Petitioner's third trial resulted in his conviction of murder in the first degree in October of 2003. Petitioner

was sentenced to life imprisonment with the possibility of parole after 25 years.

The parties do not challenge the procedural history of the case or the facts stated by the Kansas appellate courts in petitioner's prior appeals. *See State v. Anthony*, 282 Kan. 201 (2006) (affirming on direct appeal); *Anthony v. State*, 253 P.3d 385, 2011 WL 2555421 (Kan.Ct.App., June 24, 2011) (Unpublished Opinion) (affirming dismissal of petitioner's K.S.A. § 60-1507 motion). Accordingly, the Court adopts those facts and shall not repeat them except as necessary to the analysis of this petition. *See* 28 U.S.C. § 2254(e)(1); *Saiz v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004).

## I. AEDPA Standard

This matter is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA imposes a "highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citation and internal quotation marks omitted). Under AEDPA, where a state prisoner presents a claim in habeas corpus and the merits were addressed in the state courts, a federal court may grant relief only if it determines that the state court proceedings resulted in a decision (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "that was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to clearly established Federal law" when: (a) the state court " 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' "; or (b) " 'the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent .' " *Maynard v. Boone*, 468 F.3d 665, 669 (10th Cir. 2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct legal rule from Supreme Court case law, but unreasonably applies that rule to the facts. *Williams*, at 407–08. Likewise, a state court unreasonably applies federal law when it either unreasonably extends, or refuses to extend, a legal principle from Supreme Court precedent where it should apply. *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).

In reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550

U.S. 465, 473 (2007). In order to obtain relief, a petitioner must show that the state court decision is "objectively unreasonable." *Williams,* 529 U.S. at 409 (O'Connor, J., concurring). "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard,* 468 F.3d at 671.

## II. Issues

### A. Comment on Petitioner's Right to Remain Silent

Petitioner contends that the prosecutor committed constitutional error by referring to Petitioner's right to remain silent. Petitioner objects to the following exchange at trial when the prosecutor asked his witness about his post-arrest interrogation of petitioner:

> Q [Prosecutor]. Detective Kennedy, the last question that you asked was to have him start at the beginning and have him go through. After that, what happened?
> A. Mr. Anthony chose - -
> Mr. Betts [Defense Counsel]: Judge, Judge, approach the bench, please - - no, that's all right, that's okay.
> The Court: Go ahead, you may answer.
> A. Yes sir. Mr. Anthony chose to discontinue the interview."

(R. XXIII, 194.)

### State Court Holding

The Kansas Supreme Court addressed this issue on direct appeal but found that it had not been properly preserved because Petitioner had not made a timely and specific objection at trial to the admission of this

evidence. It applied the general rule that a new legal theory may not be asserted for the first time on appeal. 282 Kan. at 206.

Then the Kansas Supreme Court examined the claim on its merits. It summarized the facts relating to Petitioner's underlying interrogation by Detective Kennedy as follows:

> At the station, Kennedy informed Anthony of his rights and questioned him for 35 minutes, during which time Anthony said that he was asleep with Brown on the morning Carrington was killed, that he had not gone to the Carringtons' house, and that he had not spoken with Carrington.
>
> Kennedy then interviewed Brown. …
>
> After interviewing Brown, Kennedy returned to renew his questioning of Anthony. Approximately 2 hours had passed. … Kennedy told Anthony that he knew Anthony had killed Carrington, that there was enough evidence to prove Anthony did it, and that all he wanted to know was why. Anthony said he did not kill Carrington.
>
> Kennedy persisted, and Anthony admitted he had gone to the Carrington home the morning of the crime. He said that he merely talked to Carrington about their differences; about the eviction; about Anthony's disability, a missing eye; and about how badly Carrington had treated him. Anthony maintained that he argued with Carrington but that Carrington had been alive when he left.
>
> Kennedy stated again that he had the evidence to prove Anthony killed Carrington, and that he just wanted to know why. Anthony finally said: "I don't know. I don't know. I'm not sure. It wasn't intentional. I guess that's it," and then, "After all the years of bullshit I couldn't take it no more." The detective then asked Anthony to start at the beginning and recount the story, and Anthony asked for a lawyer and ended the interview.

282 Kan. at 204-05.

The Kansas Supreme Court distinguished Petitioner's facts from those in *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976):

> This is not a case, as in *Doyle,* where a defendant was silent when first contacted by law enforcement officers. See *Doyle,* 426 U.S. at 619, 96 S.Ct. 2240. Anthony was not silent. When interrogated, he confessed. He never invoked his right to silence. And he invoked his right to counsel only after the cat was out of the bag. Under these circumstances, we see no *Doyle* violation and no federal or state constitutional problem.

282 Kan. at 206-07. It thus concluded that Plaintiff's Fifth Amendment rights had not been violated.

### Habeas Review

Although this issue may be procedurally barred, this court will reach the merits of this issue because the Kansas Supreme Court did.

The United States Supreme Court in *Doyle* held that "the use for impeachment purposes of petitioner's silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment." *Doyle v. Ohio*, 426 U.S. at 619 (1976). "This rule is based upon a recognition that it is fundamentally unfair for the government to inform a defendant of his right to remain silent and then ask at trial that a negative inference be drawn from that silence." *United States v. Canterbury,* 985 F.2d 483, 486 (10th Cir. 1993). But here, Petitioner did not testify and the prosecutor did not use petitioner's post-*Miranda* silence to impeach him. Further, Petitioner initially waived his right to remain silent during his initial interview and spoke with the detective. To inform the jury of the conclusion of that interview raises no negative inference. Neither the prosecutor's question nor the witness's response was of such character that

the jury would naturally or necessarily take it to be a comment on the petitioner's post-arrest silence. Cf *Knowles v. United States,* 224 F.2d 168, 170 (10th Cir. 1955); *United States v. Montgomery*, 802 F.2d 1225, 1227 (10th Cir. 1986). The Kansas Supreme Court thus reasonably found *Doyle* inapplicable.

Because the Kansas Supreme Court's rejection of this claim was not contrary to, or an unreasonable application of, clearly-established Supreme Court jurisprudence, Petitioner is not entitled to habeas relief with respect to this claim.

### B. Double Jeopardy

Petitioner contends that trying him three times on the murder charge by using the same theory and same facts violated his right against double jeopardy. Dk. 1, p. 9. Petitioner argues that he because he was acquitted of the theft and burglary charges, he cannot be prosecuted for first-degree murder, which arose out of the same facts. *Id.*

### State Court Holding

The Kansas Court of Appeals (KCOA) decided this issue in reviewing the dismissal of Petitioner's collateral appeal. *Anthony v. State*, 253 P.3d 385, 2011 WL 2555421 (Kan. Ct. App. June 24, 2011) (Unpublished Opinion). There, Petitioner argued that by finding him not guilty of theft and burglary, the jury must have concluded that he wasn't at the scene of the theft, burglary and murder; if he wasn't there, he couldn't have committed

the murder. Thus, he contends, his conviction for the murder necessarily required proving a fact—his presence at the murder scene—that had been decided against the State in the second trial.

The KCOA held that Petitioner had shown no violation of the double jeopardy clause, reasoning:

> . . . the jury's conclusion that the state hadn't proven the theft and burglary charges doesn't mean that jurors had to conclude Anthony wasn't at the murder scene at all. Assuming a theft and burglary occurred, the person who committed that offense had to step *inside* the home, while the murder apparently occurred *outside* the home, where Carrington'[s] body was found.

2011 WL 2555421 at 2. The KCOA noted that the person who murdered the victim did not necessarily also commit the burglary and theft. *Id*, at 1. The Court found no violation of the double-jeopardy bar, concluding that petitioner's acquittal on the aggravated burglary and theft charges did not require a determination inconsistent with any fact necessary to petitioner's conviction of murder in the first degree.

### Habeas Review

The Double Jeopardy Clause offers three protections: against a second prosecution for the same offense after acquittal; for a second prosecution for the same offense after a conviction; and against multiple punishments for the same offense. *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). *See Monge v. California*, 524 U.S. 721, 118 S. Ct. 2246, 141 L. Ed. 2d 615 (1998). Where a hung jury results in a mistrial, a subsequent trial does not place defendant in jeopardy twice, since it is a

continuation of the initial jeopardy that began when jury was first impaneled. *Yeager v. United States*, 557 U.S. 110, 129 S. Ct. 2360, 174 L. Ed. 2d 78 (2009). The "interest in giving the prosecution one complete opportunity to convict those who have violated its laws" justifies treating the jury's inability to reach a verdict as a nonevent that does not bar retrial. See *Arizona v. Washington,* 434 U.S. 497, 509, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978).

But when a person is acquitted of one offense, the State may not try that person for a related offense if a fact that must be proved for the second offense was necessarily at issue in the count in which the defendant was acquitted. *Yeager v. United States,* 557 U.S. 110129 S.Ct. 2360, 174 L.Ed.2d 78 (2009). Petitioner contends that his acquittal of the aggravated burglary and theft charges required a conclusion that he was not present at the murder scene.

The KCOA found this to be an irrational conclusion, and reasonably so. The record shows that the victim was found dead on the ground outside his home at about 9:30 a.m. on a weekday morning. The coroner determined that he had died from damage to his skull and brain caused by multiple blows to the head and neck. The victim's wife also discovered that she was missing $60 to $80 in $20 bills that had been in her purse just inside the open back door to the house, which she and the victim shared.

The trial court instructed the jury that to convict petitioner of aggravated burglary, it had to find the following elements: he knowingly entered a building; he did so without authority; he did so with intent to commit a theft therein; a human being was in the building; and the act occurred on or about October 9, 2002, in Shawnee County, Kansas. July 2003 Tr. Vol. V, p. 699.

The court instructed the jury that to convict the petitioner of theft, it had to find the following elements: Ms. Carrington owned U.S. currency; petitioner obtained unauthorized control over that property; petitioner intended to deprive Ms. Carrington personally of the use or benefit of the property; the value of the property was less than $500; and the act occurred on or about October 9, 2002, in Shawnee County, Kansas. July 2003 Tr. Vol. V, p. 697.

At petitioner's third trial, the court instructed the jury that to convict the petitioner of first degree murder, it had to find the following elements: petitioner intentionally killed David E. Carringon; the killing was done with premeditation; and this act occurred on or about October 9, 2002, in Shawnee County, Kansas. Oct. 2003 Tr. Vol IV, p. 559-60. Identical first-degree murder elements had been required in the petitioner's second trial, as well. See July 2003 Tr. Vol. V, p. 697.

Nothing in these legal elements or in the facts presented at trial compels the conclusion that petitioner's acquittal on the offense of

aggravated burglary or theft contradicted any fact essential to his conviction of first-degree murder. Two witnesses primarily, if not solely, addressed the burglary and theft crimes. The murder victim's wife testified that she was missing $60 to $80 in $20 bills from her purse, which she kept inside the open back door of the house which she and the murder victim shared, and petitioner's girlfriend testified that petitioner left the morning of the murder and when he returned home, he had three $20 bills. The jury could reasonably have found a lack of proof that the money petitioner had in his possession had been taken from Ms. Carrington's purse, or some other failure of proof beyond a reasonable doubt on an element necessary for conviction of these offenses.

Neither acquittal compels the inference that the jury found petitioner was not present at the scene of the murder, which was near the scene of the theft. Had the jury found that petitioner was not present at the scene, it likely would have acquitted him of the murder charge as well, instead of resulting in a hung jury. And finding that petitioner was not present at the scene is particularly unlikely given petitioner's confession, admitted through Detective Kennedy, that he had gone to the victim's house and had spoken with the victim the very morning he was killed.

The KCOA applied law consistent with federal law on these claims, and reached a reasonable conclusion. Thus no basis for habeas relief has been shown.

## C. Prosecutorial Misconduct

Petitioner next alleges that the prosecutor committed misconduct that denied him a fair trial. During opening statement, the prosecutor said, "Detective Kennedy asked [Mrs. Carrington] is there anyone that Mr. Carrington had been having problems with. Mrs. Carrington was able to give them one name, George Anthony." (R. XXII, 20.) Petitioner believes that this mischaracterized the evidence and prejudiced him by erroneously leading the jury to believe that Mrs. Carrington, when asked about her husband's enemies, gave the Detective *only* Petitioner's name.

### State Court Holding

The Kansas Supreme Court found the prosecutor's statement to be ambiguous because it could mean that Mrs. Carrington gave Detective Kennedy only Petitioner's name, or it could mean that she gave him Petitioner's name among other names. During trial, Mrs. Carrington stated that she gave Kennedy two or three names, including Petitioner's:

> Q. Did he [Kennedy] ask you whether your husband had been having problems with anybody?
> A. Yes, he asked me this question.
> Q. And did you give him any names?
> A. Yes, I told him.
> Q. Who did you tell him, how many names did you give him?
> A. Two or three names, I believe.
> Q. Okay. Who did you tell him?
> A. First I told him - - I told detective that my husband had problem with George Anthony, then I told him that my husband had some problem on his job, Sante Fe, then I told about - - another guy.

(R. XXII, 67.) Petitioner asserts that this testimony failed to name the other persons, and that the evidence failed to show what steps police took outside of court to verify this testimony.

The Kansas Supreme Court addressed this issue when it affirmed Petitioner's conviction. Its legal analysis first asked whether the complained-of conduct was outside the considerable latitude given a prosecutor in discussing the evidence, then asked whether the remarks constituted plain error, i.*e.,* whether the statements prejudiced the defendant and denied him a fair trial. *Anthony*, 282 Kan. at 207. It resolved this issue against Petitioner, stating:

> We first note the prosecutor's statement did not necessarily imply that Yelena Carrington gave police *only* one name. The statements were ambiguous. They could have meant that she gave Kennedy Anthony's name, among others; they could have meant that she gave Kennedy only Anthony's name.
> Further, to the extent there was ambiguity, Yelena Carrington's testimony clarified it. When questioned at trial, she said that she gave Kennedy two or three names, including Anthony's.
> Under these circumstances, even if the prosecutor's remarks during opening statement could be classified as "outside the wide latitude" afforded the State's attorney in discussing evidence, in isolation, they are not gross and flagrant, and would have been harmless under both K.S.A. 60-261 and *Chapman* [*v. California*, 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)].

*Anthony*, 282 Kan. at 208.

**Habeas Review**

Petitioner contends that the prosecutor's statement was misleading and unambiguous, and that the truth that the deceased had other enemies

was never revealed through testimony by the State's witness. Dk. 1, p. 13-14.

Even assuming, *arguendo*, that the prosecutor's comments may have been misleading, "not every improper or unfair remark made by a prosecutor will amount to a federal constitutional deprivation." *Neill v. Gibson,* 278 F.2d 1044, 1061 (10th Cir. 2001) (citations omitted). "Rather, to warrant habeas relief, 'it is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Id.* (citing *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986)). Habeas relief is not warranted unless the prosecutorial misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (citation omitted).

Here, the judge instructed the jury prior to closing arguments that statements offered by counsel were not evidence.

> Statements, arguments, and remarks of counsel ... are not evidence. If any statements are made that are not supported by evidence, they should be disregarded.

Tr. Vol. 5, pp. 735-36.

> ... whatever comment counsel may make during the course of the trial, or what they may say in their arguments, you will bear in mind that it is your sworn duty as triers of this case to be governed in your deliberations and final conclusions by the evidence as it has been produced before you and as you understand and remember it, and the law as given you in these instructions.

*Id*, pp. 740-41.

The Kansas Supreme Court reasonably determined the facts and properly applied law consistent with federal law on these claims. Given these instructions, the brief nature of the prosecutor's remarks in the trial as a whole, the fact that the prosecutor's statement was literally accurate although perhaps misleading, and the clear testimony by Mrs. Carrington that she gave Kennedy two or three names of persons with whom the decedent was having trouble, the court finds no denial of due process. Petitioner is thus not entitled to federal habeas relief on this claim.

### D. Motion in Limine

Petitioner next contends that the trial court erroneously granted the State's motion in limine, excluding evidence that Petitioner desired to present to the effect that some other person had motive to commit the murder. Dk. 1, p. 11.

Respondent contends that this issue is procedurally barred because Petitioner did not raise this claim to the state courts in his direct appeal or when he appealed the summary denial of his K.S.A. § 60-1507 motion. "A state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999).

Petitioner counters that he exhausted this issue by presenting it to the state court in his K.S.A. § 60-1507 motion. There, the trial court found that petitioner failed to show that any in limine motion had been granted. No. 07-

C-1462, Vol. I, p. 62. But petitioner must appeal this issue to exhaust it, as the exhaustion prerequisite is not satisfied unless all claims asserted have been presented by "invoking one complete round of the State's established appellate review process." *Id.* at 845. This means the claims must have been "properly presented" as federal constitutional issues "to the highest state court, either by direct review of the conviction or in a post-conviction attack." *Dever v. Kansas State Penitentiary,* 36 F.3d 1531, 1534 (10th Cir. 1994).

By filing an appeal and a post-conviction motion including other issues but excluding this one, petitioner abandoned this claim, and cannot raise it in state court now. *See State v. Edwards*, 260 Kan. 95, 98 (1996) ("It is well settled that an issue neither briefed nor argued on appeal is deemed to have been abandoned. [citation omitted] In such circumstances, nonaction is considered to constitute abandonment."); *LaFevers v. Gibson,* 182 F.3d 705, (10th Cir. 1999) (finding an independent and adequate state law ground where the state court denied an issue because it was waived when not raised).

This court can reach the merits of this claim only if Petitioner shows cause for his default and actual prejudice as a result of the alleged violation of federal law, or demonstrates that this Court's failure to consider these claims will result in a miscarriage of justice. *Thacker v. Workman,* 678 F.3d

820, 835 (10th Cir.2012), *cert. denied*, __ U.S. __, 133 S.Ct. 878, 184 L.Ed.2d 688 (2013).

Cause may be shown by either actual ineffective assistance of counsel or some objective factor external to the defense that impeded efforts to comply with state procedures. *Coleman,* 501 U.S. at 725; *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Petitioner makes no such showing with respect to this issue, so cannot show cause and prejudice.

The fundamental miscarriage of justice exception allows a defendant to obtain review of his defaulted claims by showing actual innocence. *See Sawyer v. Whitley,* 505 U.S. 333, 339–40, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). To establish actual innocence, Petitioner must demonstrate that, " 'in light of all the evidence,' it is more likely than not that no reasonable juror would have convicted him." *Id.* (citations omitted). But the testimony at trial, including the fact that petitioner confessed to killing the victim, as the jury saw on the videotape, precludes him from meeting this burden. *See Anthony*, 282 Kan. at 205. Accordingly, this claim of error is procedurally barred from habeas review.

### E. Sufficiency of the Evidence

Petitioner asserts that the government presented insufficient evidence to convict him of murder in the first degree. Specifically, Petitioner asserts the following: despite DNA testing and other analysis, no physical evidence

implicated him in the murder; contrary to the Kansas Supreme Court's finding, he did not confess to the murder; and the prosecution failed to prove premeditation, intent, and actual killing of the deceased.

When petitioner raised this issue in his underlying § 60-1507 motion, the trial court found sufficient circumstantial evidence, citing *Jackson v. Virginia*, 443 U.S. 307 (1978) (finding a due process denial based on insufficient evidence only where no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt based the evidence admitted at trial, viewed in the light most favorable to the prosecution). No. 07-C-1462, Vol. I, p. 61. But Petitioner did not raise this claim either in his direct appeal or when he appealed the summary denial of his 60-1507 motion. Accordingly, for the same reasons stated above in addressing petitioner's claim regarding the motion in limine, this claim of error is procedurally barred from habeas review. And petitioner has not shown cause and prejudice or a miscarriage of justice, as is necessary to permit this Court to review the merits.

### F. Ineffective Assistance of Counsel [1]

Petitioner contends that his court-appointed counsel was non-responsive to him at times during his trial and that his appellate counsel failed to include on direct appeal all the issues that Petitioner wished to include. Petitioner asserts that had those unspecified issues been added, the

---

[1] Petitioner also includes a claim for denial of his 14th and 6th Amendment rights, *see* Dk. 1, p. 14, but this issue is included in the court's discussion of the sufficiency of evidence.

claims he raised in pro se fashion in his § 60-1507 proceeding would have been done with professional guidance on direct appeal. Dk. 1 pp. 14-15. Respondent counters that this issue is procedurally barred.

### State Court Holding

The KCOA, on appeal from petitioner's K.S.A. § 60-1507 motion, found this claim of inadequate attorney performance had been untimely raised, and that no exception permitted petitioner to raise that claim either out of time or for the first time on appeal. 2011 WL 2555421 at 3, 4.

> Anthony filed his K.S.A. 60-1507 motion within the 1 year of the final, adverse determination of his direct appeal, which is the deadline set by Kansas statute. See K.S.A. 60-1507(f). But his motion to add a claim that his attorneys did a poor job didn't come until more than 9 months after the 1-year deadline. So Anthony could present his claims of inadequate attorney performance only if one of the two circumstances were present: (1) that the filing of the amended motion relates back and can be considered as if it were filed when his motion was filed; or (2) that failure to meet the 1-year time limit could be excused under the statutory exception when a deadline extension is necessary "to prevent a manifest injustice." . . . .
>
> Neither circumstance is present here. . . .
>
> We therefore cannot consider these claims of substandard attorney performance, which have been raised for the first time on appeal.

*Anthony v State*, 2011 WL 2555421 at *3-4.

### Habeas Review

Under federal law, a federal court may not review the merits of a claim if the state court's rests on a state-law ground that is independent of the federal question and adequate to support it. *Coleman v. Thompson*, 501 U.S. 722, 729-30, 111 S.Ct. 2546, 2553-2554, 115 L.Ed.2d 640 (1991). "This

rule applies whether the state law ground is substantive or procedural." *Id.*
at 729. A state rule is independent if it relies on state law rather than federal
law and is adequate if it is regularly followed and applied evenhandedly. See
*Hickman v. Spears*, 160 F.3d 1269, 1271 (10th Cir. 1998). Thus when a
remedy is unavailable because of the petitioner's failure to comply with the
state court's timing rules, that unavailability is itself an adequate and
independent state-law ground that bars a federal court's ability to hear the
claim.

The rule applied by the KCOA as to this issue is both independent and
adequate. The statute of limitations is a state law so is independent, and is
regularly applied to bar the addition of new, untimely claims to a timely-filed
petition unless they relate back to an issue raised in the original petition.
*See e.g., Pabst v. State*, 287 Kan. 1, 21-26 (2008); *State v. Ludlow*, 37
Kan.App.2d 676, 682-84 (2007).

Thus, this Court cannot review the merits of this claim unless
petitioner can show cause for his default and actual prejudice as a result of
the alleged violation of federal law, or demonstrate that this Court's failure
to consider these claims will result in a fundamental miscarriage of justice.
*Coleman*, 501 U.S. at 750.

Petitioner has not shown that any external factor prevented him from
including his ineffective assistance of counsel claims in his initial post-
conviction petition. Petitioner filed his 60-1507 motion pro se, and has not

offered any reason why he did not include in that motion his claims of ineffective assistance of trial and appellate counsel. Although ineffective assistance of counsel can constitute the required cause, *see Murray,* 477 U.S. at 488, Petitioner has not demonstrated actual ineffective assistance of counsel. Instead, petitioner's claims of ineffective are too vague and lacking in evidentiary support to make the required showing. Further, an ineffective assistance of counsel claim asserted as "cause" must first have been presented to the state courts as an independent claim. *See Murray,* 477 U.S. at 488–89; *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Fleeks v. Poppell,* 97 Fed.Appx. 251, 261 n. 7 (10th Cir.), *cert. denied,* 543 U.S. 933 (2004). This has not been done.

Nor has petitioner shown prejudice or provided any facts that would show actual innocence. *See Calderon v. Thompson,* 523 U.S. 538, 559 (1998) (The miscarriage of justice exception is concerned with actual as compared to legal innocence … To be credible, a claim of actual innocence must be based on reliable evidence not presented at trial).

But even had this Court reached the merits, the petitioner would not have prevailed. The standard for assessing appellate counsel's performance is the same as that applied to trial counsel. *Smith v. Robbins,* 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). Petitioner has not shown that his appellate counsel's performance was objectively unreasonable, or demonstrated a reasonable probability that but for his counsel's alleged

errors, he would have prevailed on appeal, as is required. *Id.* Moreover, a criminal defendant does not have a constitutional right to compel counsel to raise claims on appeal, even nonfriviolous ones, if counsel, "as a matter of professional judgment, decides not to present those points." *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Indeed, "winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues," is one of the hallmarks of effective appellate advocacy. *Id* at 751–752. Counsel cannot be found ineffective for failing to raise meritless claims. *See Strickland v. Washington,* 466 U.S. 668, 691–96 (1984) (no ineffective assistance of counsel absent a showing of reasonable probability that outcome would have been different); *Martin v. Kaiser,* 907 F.2d 931, 936 (10th Cir. 1990) (failure to raise meritless argument cannot constitute ineffective assistance of counsel).

## III. Evidentiary Hearing

The court finds no need for an evidentiary hearing in this review. ("[A]n evidentiary hearing is unnecessary if the [habeas] claim can be resolved on the record.)" *Anderson v. Attorney Gen. of Kansas,* 425 F.3d 853, 859 (10th Cir. 2005). *See Schriro*, 550 U.S. at 474 ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

## IV. Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Proceedings states that the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard has not been met as to any issue presented herein, so the court denies a certificate of appealability.

IT IS THEREFORE ORDERED that the petition for habeas corpus relief under 28 U.S.C. § 2254 (Dk.1) is denied.

Dated this 20th  day of March, 2014, at Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge